UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BROWN & BROWN, LLP, | ) | **05** ) **1 1 0 1 6 NMG** |
| Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | |
| v. | ) | RECEIPT # |
| | ) | AMOUNT $ |
| BARTON CRAIG, and LEFKOWITZ | ) | SUMMONS ISSUED |
| GARFINKEL, CHAMPI & DeRIENZO, MAGISTRATE JUDGE | ) | LOCAL RULE 4.1 |
| P.C., | ) | WAIVER FORM |
| | ) | MCF ISSUED |
| Defendants. | ) | BY DPTY. CLK. |
| | ) | DATE |

## NOTICE OF REMOVAL OF CIVIL ACTION

Pursuant to 28 U.S.C. §§ 1441, 1446 and Local Rule 81.1, Defendant Lefkowitz,

Garfinkel Champi & DeRienzo, P.C. ("LGC&D" or "Defendant") hereby notices the removal of

the above-captioned matter, Brown & Brown, LLP v. Barton Craig, and Lefkowitz, Garfinkel,

Champi & DeRienzo, P.C., Civil Action No. 05-1534-BLS (the "Action") from the Suffolk

Superior Court Department of the Trial Court of the Commonwealth of Massachusetts, to the

United States District Court for the District of Massachusetts. In support thereof, Defendant

states the following:

1.      Plaintiff Brown & Brown, LLP ("B&B" or "Plaintiff") commenced the Action

herein in the Superior Court of Massachusetts, Suffolk County on April 20, 2005.

2.      A copy of the Summons, Complaint, Corporate Disclosure Statement and the

Civil Action Cover Sheet served on Defendant on or about April 25, 2005, is attached as Exhibit

A.  A Stipulation extending LGC&D's time to respond to the Complaint to May 27, 2005, filed

by the parties on May 11, 2005, is attached as Exhibit B.  Taken together, Exhibits A and B

constitute all pleadings in the above-referenced action. Certified copies of the docket sheet and all pleadings and orders filed with the Suffolk Superior Court in the Action will be provided to this Court pursuant to Local Rule 81.1.

3.     B&B's Complaint purports to state claims against LGC&D for tortious interference with contractual and/or advantageous business relations and unfair and deceptive trade practices stemming from its subsequent employment of a former B&B employee, defendant Barton Craig ("Craig"). In particular, B&B alleges that it lost the business of a particular account, Granite Telecom, to LGC&D as a result of the actions of Craig in violation of an employment agreement.

4.     The Complaint seeks alleged damages including double and/or treble damages, together with costs, interest and fees.

5.     In accordance with 28 U.S.C. § 1446, this Notice of Removal has been filed within thirty (30) days after receipt of B&B's Complaint.

6.     This Court has original jurisdiction over this Action pursuant to 28 U.S.C. § 1332. B&B is an accounting firm with its principal place of business in the Commonwealth of Massachusetts. Defendant Craig is a citizen of the State of Rhode Island and defendant LGC&D is a corporation organized and existing under the laws of the State of Rhode Island with its principal place of business in the State of Rhode Island.

7.     Although not articulated in B&B's Complaint, the amount in controversy most certainly exceeds the sum of $75,000.00, exclusive of interest and costs, the jurisdictional amount under 28 U.S.C. § 1332. The value of the Granite Telecom account, whose business B&B alleges it lost as a result of the actions of the defendants, exceeds $75,000.00.

8.    By reason of the foregoing and pursuant to 28 U.S.C. § 1441(a), Defendant

wishes to exercise its right to have this Action removed from the Superior Court Department,

Commonwealth of Massachusetts, Suffolk, ss.

9.    Venue in this District is proper pursuant to 28 U.S.C. § 1441(a) and 28 U.S.C.

§ 1391(a).

10.    The time has not elapsed during which Defendant is entitled to file the Notice of

Removal pursuant to 28 U.S.C. § 1446.

11.    Defendant will provide a certified copy of this Notice of Removal to the Clerk of

the Court for the Suffolk Superior Court Department of the Trial Court for the Commonwealth of

Massachusetts.

Respectfully submitted,

LEFKOWITZ, GARFINKEL, CHAMPI &
DERIENZO, P.C.

By its attorneys,

Robert M. Gault, BBO #187240
Mintz, Levin, Cohn, Ferris, Glovsky,
    and Popeo, P.C.
One Financial Center
Boston, MA 02111
Dated: May 17, 2005                    (617) 542-6000

3

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of May, 2005, I caused the foregoing Notice of Removal to be served by first class mail upon counsel for Plaintiff Brown & Brown LLP at the following address:

> Patrick J. Bannon, Esq.
> Gadsby Hannah LLP
> 225 Franklin Street
> Boston, MA 02110

Robert M. Gault, BBO# 187240

LIT 1520111v1

4

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. Title of case (name of first party on each side only)___Brown & Brown LLP v. Barton Craig, et. al._____

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   [ ]  I.   160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

   [ ]  II.   195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,  *Also complete AO 120 or AO 121
              740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.  for patent, trademark or copyright cases

   [✓]  III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
              315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
              380, 385, 450, 891.

   [ ]  IV.  220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
              690, 810, 861-865, 870, 871, 875, 900.

   [ ]  V.   150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

_____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

                                    YES [ ]    NO [✓]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)

                                      YES [ ]    NO [✓]

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                                      YES [ ]    NO [✓]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                                      YES [ ]    NO [✓]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

                                    YES [✓]    NO [ ]

     A.   If yes, in which division do all of the non-governmental parties reside?

        Eastern Division [✓]      Central Division [ ]      Western Division [ ]

     B.   If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

        Eastern Division [ ]      Central Division [ ]      Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

                                      YES [ ]    NO [✓]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME ___Robert M. Gault, Esq._____

ADDRESS ___Mintz, Levin Cohn, Ferris, Glovsky and Popeo, P.C., One Financial Center, Boston, Massachusetts___

TELEPHONE NO. ___(617) 542-6000_____

(CategoryForm.wpd - 5/2/05)

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Brown & Brown LLP

**DEFENDANTS**

Barton Craig and Lefkowitz, Garfinkel, Champi & DeRienzo, P.C.

**(b)** County of Residence of First Listed Plaintiff  Suffolk County, MA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  Providence County, RI
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Patrick J. Bannon, Gadsby Hannah LLP, 225 Franklin Street
Boston, MA 02110, (617) 345-7000

Attorneys (If Known)

Robert M. Gault, Mintz Levin, One Financial Center, Boston, MA
Michael Carroll, Esq., 72 Pine Street, Providence, RI, 02903

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☒ 4 Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES(Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | **PERSONAL INJURY** ☐ 362 Personal Injury - Med. Malpractice ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce ☐ 460 Deportation |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 480 Consumer Credit |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 490 Cable/Sat TV ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | **PERSONAL PROPERTY** ☐ 370 Other Fraud ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** ☐ 861 HIA (1395ff) ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | | | | | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. Sections 1441, 1446 and 1332 - Diversity of Citizenship

Brief description of cause:
Breach of employment agreement and interference with business relations.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE
5-17-05

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #         AMOUNT         APPLYING IFP         JUDGE         MAG. JUDGE

RWM



Berin Sultan Romagnolo
bromagnolo@ghlaw.com

Tel: 617 345 7085
Fax: 617 204 8085

April 20, 2005

CERTIFIED MAIL RETURN RECEIPT REQUESTED

Lefkowitz, Garfinkel, Champi & DeFrienzo PC
10 Weybosset Street
Providence, RI  02903

> Re:    Brown & Brown, LLP v. Barton Craig
> and Lefkowitz, Garfinkel, Champi & DeFrienzo PC
> Suffolk Superior Court Civil Action No. 05-1534-BLS

225 Franklin Street
Boston MA 02110

Tel 617 345 7000
Fax 617 345 7050
www.ghlaw.com

Dear Madam or Sir:

This firm represents Brown & Brown LLP in the above entitled action, which was filed with the Suffolk Superior Court in Massachusetts today.  I am forwarding to you a copy of the following documents:

1.    Complaint,
2.    Civil Action Cover Sheet,
3.    Corporate Disclosure Statement, and
4.    A Summons directed to you.

This letter, with its enclosures, constitutes service of the summons and complaint upon you.

Very truly yours,

Berin Sultan Romagnolo

BSR/jrg
Enclosures
cc:    Patrick J. Bannon

B0410737v1

# Commonwealth of Massachusetts

SUFFOLK, ss.



SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. 05-1534-BLS

Brown & Brown, LLP _____ , Plaintiff(s)

v.

Barton Craig and Lefkowitz, Garfinkel,
Champi & DeRienzo, P.C. _____ , Defendant(s)

## SUMMONS

To the above-named Defendant: Lefkowitz, Garfinkel, Champi & DeRienzo, P.C.
10 Weybosset St., Providence, RI  02903

You are hereby summoned and required to serve upon___ Patrick J. Bannon of _____
Gadsby Hannah LLP

plaintiff's attorney, whose address is 225 Franklin St., Boston, MA  02110 ____ , an answer to
the complaint which is herewith served upon you, within 20 days after service of this summons upon you,
exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the
relief demanded in the complaint. You are also required to file your answer to the complaint in the office
of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable
time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which
you may have against the plaintiff which arises out of the transaction or occurrence that is the subject
matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Suzanne V. DelVecchio, Esquire, at Boston, the 20th _____ day of
April _____ , in the year of our Lord two thousand 05 _____ .

*Michael Joseph Donovan*

Clerk/Magistrate

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.

2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant,
each should be addressed to the particular defendant.

3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED

(1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV.P. 1 3rd Rev. 30M 10/2000

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a
defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the
original in the Clerk's Office.

| CIVIL ACTION COVER SHEET | DOCKET NO.(S) **B.L.S.** | | Trial Court of Massachusetts Superior Court Department County: SUFFOLK |
|---|---|---|---|

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| Brown & Brown, LLP | Barton Craig and Lefkowitz, Garfinkel, Champi & DeRienzo, PC |

| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE Patrick J. Bannon Erin S. Romagnolo, Gadsby Hannah LLP, 225 Franklin St., Boston, MA 02110  617-345-7000 Board of Bar Overseers number: 635523 & 638375 respectively | ATTORNEY (if known) |
|---|---|

## Origin Code

### Original Complaint

### TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify)    TRACK | IS THIS A JURY CASE? |
|---|---|---|
| D2 | Non-soliciation Agreement ( B ) | ( x ) Yes    ( ) No |

**The following is a full and detailed statement of the facts on which plaintiff relies to determine eligibility in to The Business Litigation Session.**

Defendant Barton Craig was a tax manager or supervisor with the plaintiff Brown & Brown, LLP's accounting firm.  He executed an Employment Agreement with Brown & Brown agreeing not to solicit or divert Brown & Brown's clients for a limited amount of time and to refrain from divulging or using Brown & Brown's confidential information.  Mr. Craig resigned from Brown & Brown and, shortly thereafter, joined a competing accounting firm, defendant Lefkowitz, Garfinkel, Champi & DeRienzo, PC ("LGC&D").  There, he successfully solicited at least one of Brown & Brown's clients, & disclosed and used Brown & Brown's confidential information, thereby damaging Brown & Brown's business relationships and causing other on-going damage. Mr. Craig's new employer, LGC&D, knew of Mr. Craig's Employment Agreement with Brown & Brown, but, nevertheless, encouraged and assisted Mr. Craig to breach his obligations to Brown & Brown.

. Special Tracking Order shall be created by the Presiding Justice of the Business Litigation Session at the Rule 16 Conference.

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT    None

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____    DATE: 4|20|05

C-6 micros.11/99

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                          SUPERIOR COURT DEPARTMENT
                                      OF THE TRIAL COURT

)
BROWN & BROWN, LLP,                   )
                                      )
                 Plaintiff,           )
                                      )
v.                                    )
                                      )          C.A. No.
BARTON CRAIG, and LEFKOWITZ,          )
GARFINKEL, CHAMPI & DERIENZO,         )
P.C.,                                 )
                                      )
                 Defendants.          )

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Mass. Supreme Judicial Court Rule 1.21, plaintiff Brown & Brown,

LLP hereby notifies the Court that it has no parent corporation and that no publicly-held

corporation owns 10% or more of its stock.

                              Respectfully submitted,
                              Plaintiff Brown & Brown, LLP
                              By its attorneys,



                              Patrick J. Bannon, BBO # 635523
                              Berin Sultan Romagnolo, BBO # 638375
                              Gadsby Hannah LLP
                              225 Franklin Street
                              Boston, MA  0211
                              (617) 345-7000

April 20, 2005

B0410590v1

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                           SUPERIOR COURT DEPARTMENT
                                       OF THE TRIAL COURT

BROWN & BROWN, LLP,                    )
                                       )        05-1534 _ BLS
          Plaintiff,                   )
                                       )        April 20, 2005
v.                           .         )        Filed & approved,
                                       )        By the Court,
. BARTON CRAIG, and LEFKOWITZ,         )   C.A. No.   Ivan Gestel J.
GARFINKEL, CHAMPI & DERIENZO,          )        attest: Lamaine A. Gatrona
P.C.,                      .           )                asst. Clerk
                                       )
          Defendants.                  )
                                       )

## MOTION FOR SPECIAL PROCESS SERVER

Pursuant to Mass. R. Civ. P. 4(c), Plaintiff Brown & Brown, LLP, by its attorneys,

hereby requests that this Court appoint Dewsnap & Associates, 92 State Street, Boston,

Massachusetts, including authorized deputies and representatives of Dewsnap & Associates, for

the purpose of serving such process as required in this civil action.

                              Respectfully submitted,
                              Plaintiff,
                              Brown & Brown, LLP
                              By its attorneys,


                              Patrick J. Bannon, BBO # 635523
                              Berin Sultan Romagnolo, BBO # 638375
                              Gadsby Hannah LLP
                              225 Franklin Street
                              Boston, MA 02110
                              (617) 345-7000

April 20, 2005



COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                          SUPERIOR COURT DEPARTMENT
                                      OF THE TRIAL COURT

```
                                   )
BROWN & BROWN, LLP,                )
                                   )
              Plaintiff,           )
                                   )
v.                                 )
                                   )   C.A. No.      05-1534 - BLS
BARTON CRAIG, and LEFKOWITZ,       )
GARFINKEL, CHAMPI & DERIENZO,      )
P.C.,                              )
                                   )
              Defendants.          )
                                   )
```

## COMPLAINT

### INTRODUCTION

1.    Brown & Brown, LLP ("B&B"), an accounting firm, brings this action against its

former employee, Barton Craig ("Craig"), and his new employer, Lefkowitz, Garfinkel, Champi

& DeRienzo, P.C. ("LGC&D").

2.    Craig promised B&B in writing that for two years after his employment ended he

would not solicit business from B&B's clients or do anything directly or indirectly to divert any

of the clients from B&B. Relying on Craig's promises, B&B introduced him to, and encouraged

him to develop strong relationships with, a number of valuable B&B clients.

3.    In July 2004, Craig resigned from B&B to work for LGC&D. Despite his

promises, Craig has successfully solicited at least one long-standing B&B client to transfer its

business to LGC&D. LGC&D knew that Craig had promised not to solicit or divert B&B's

clients. Nevertheless, it has encouraged and assisted Craig to breach those promises. B&B has

suffered substantial damages.

B0406687v1

## PARTIES

4.     Brown & Brown, LLP ("B&B") is an accounting firm with a principal office at 90 Canal Street in Boston, Massachusetts, and another office in Westborough, Massachusetts.

5.     Defendant Barton Craig ("Craig") is an individual who lives at 81 Barnes Street, Providence, Rhode Island. Until July, 2004, Craig worked for B&B in Boston, Massachusetts. Craig now works for LGC&D, where he continues to provide services to clients in Massachusetts.

6.     Defendant Lefkowitz, Garfinkel, Champi & DeRienzo, P.C. ("LGC&D") is an accounting firm located at 10 Weybosset Street, Providence, Rhode Island. LGC&D provides services to clients throughout New England, including clients that are located in Massachusetts.

## FACTS

### B&B's Reputation and Client Relationships

7.     B&B is a full-service accounting firm with more than 80 employees and two offices. B&B has been a leader in New England in providing auditing, tax and consulting services to clients of all sizes in a wide range of industries. Over its 20-year history, B&B has earned a reputation for providing services of the highest quality.

8.     B&B spends significant money and employee time developing and maintaining strong positive relationships with key individuals at clients and prospective clients. In the accounting business, such relationships are critical to obtaining and keeping clients.

9.     In order to provide services efficiently, B&B frequently assigns responsibility for a client's work to persons other than the person who brought the client to B&B. B&B encourages all of the employees who work with a client to develop a strong relationship and work closely with the client.

- 2 -

10.    To protect itself from losing clients when employees leave, B&B requires its employees, as a condition of employment, to promise in writing not to solicit or divert clients from B&B for a period of time after the end of their employment.

11.    If B&B were unable to prevent former employees from soliciting or diverting its clients for a period of time after the end of the employees' employment, B&B personnel who bring clients to the firm would be reluctant to allow other employees of the firm to work closely with the clients. The result would be that B&B would provide its services less efficiently.

### B&B's Relationship with the Hale Family and Their Businesses

12.    In about 1993, B&B began providing tax and accounting services to a Massachusetts-based telecommunications company called Network Plus, Inc. In or about June 1999, Network Plus became a publicly traded company.

13.    Network Plus was founded by Robert T. Hale, Sr. and Robert T. Hale, Jr. In about 1993, B&B began providing accounting services to the Hale family.

14.    In or about 2002, Network Plus failed. Shortly thereafter, Robert T Hale, Sr. and Robert T. Hale, Jr. co-founded another telecommunications company called Granite Telecommunications, LLC ("Granite Telecom"). Granite Telecom is based in Quincy, Massachusetts.

15.    B&B provided accounting services to Granite Telecom from its inception. In addition, B&B continued providing accounting services to the Hale family.

16.    B&B's work for the Hale family and their businesses has provided B&B with significant annual revenues since 1993.

### B&B Hires Craig and Craig Promises Not to Solicit or Divert B&B's Clients

17.    On or about January 10, 2000, B&B hired Craig as an accountant. Craig's title was tax supervisor or tax manager.

- 3 -

18.    At the beginning of his employment and as a condition of employment, Craig

entered into an employment agreement with B&B. Effective on July 21, 2000, Craig and B&B

entered into a superseding employment agreement. Effective on January 1, 2002, Craig and

B&B again entered into a superseding employment agreement.

19.    The January 1, 2002 employment agreement (the "Employment Agreement")

remained in effect through the end of Craig's employment and has never been superseded,

amended or canceled. For convenience, a copy of the Employment Agreement is attached hereto

as Exhibit A.

20.    In Section 4 of the Employment Agreement, Craig promised that for a period of

two years after the end of Craig's employment with B&B, he would not directly or indirectly:

"(a)    Solicit the business, trade or patronage of any of the clients or
customers of [Brown & Brown] or its subsidiaries. . . .

. . . .

"(b)    Divert or attempt to divert from [Brown & Brown] any business
whatsoever by either influencing, attempting to influence or soliciting
or attempting to solicit any of [Brown & Brown's] customers or
clients or employees.

"(c)    Disclose in any way to any person, firm, corporation or any other
operation or entity, or use on [his] own behalf, for any reason or
purpose, any information gained by [him] while in [Brown &
Brown's] employ, including without limitation, [Brown & Brown's]
client or customer lists, computer disks containing any information
relevant to [Brown & Brown's], accounting and financial data, pricing
and discount practices, special programs relating to sales, service,
training, products and equipment, and the methods, techniques,
devices and operations of [Brown & Brown's] as they may exist from
time to time."

### B&B Introduces Craig to Many of Its Clients, Including Granite Telecom.

21.     Relying on Craig's promises not to solicit or divert its clients, B&B introduced
Craig to, and encouraged him to develop and maintain strong relationships with, a number of
B&B's clients.

22.     B&B assigned Craig to be the tax manager for a number of B&B's clients. As tax
manager, Craig had day-to-day responsibility for helping clients prepare their tax returns and
handle other tax-related accounting issues. He worked closely with key personnel at each client.

23.     In 2000, B&B introduced Craig to key personnel at Granite Telecom and assigned
him to be the tax manager for the Granite Telecom account. Craig served as the tax manager of
the Granite Telecom account through the end of his employment. With B&B's encouragement,
Craig worked closely with and developed good relationships with a number of key Granite
Telecom employees, including Garrett McGurrin and Rand Currier.

### Craig Had Access To B&B's Confidential and Proprietary Information.

24.     As a B&B tax supervisor, Craig had access to various forms of B&B's
confidential and proprietary business information, including without limitation: the rates B&B's
normally charged for its services; the prices B&B charged particular clients for particular
projects; B&B's billing practices and pricing for the Granite Telecom engagement, the identities
and contact information of key personnel at B&B's clients and prospects; and the particular
likes, dislikes and needs of B&B clients. In particular, Craig had all of this information for
Granite Telecom.

25.     B&B protected this information by, among other measures, adopting policies
forbidding employees to use or disclose such information, using passwords to protect
information contained on B&B's computer system, and requiring employees to enter into written
agreements promising not to use or disclose such information.

- 5 -

B0408756

### Craig Resigns and Breaches His Obligations to B&B

26.     On or about July 23, 2004, Craig voluntarily resigned from B&B to join LGC&D, an accounting firm that is a direct competitor of B&B.

27.     In violation of his Employment Agreement, Craig solicited, attempted to influence and influenced Granite Telecom to use LGC&D's services rather than B&B's services.

28.     Soon after Craig's departure from B&B, Granite Telecom notified B&B that it was putting its business out to bid. The only firm other than B&B invited to bid was LGC&D.

29.     LGC&D and B&B submitted proposals to Granite Telecom. Craig helped prepare and present LGC&D's proposal to Granite Telecom and discussed LGC&D's proposal with Granite Telecom.

30.     Shortly after receiving bids from LGC&D and B&B, Granite Telecom moved its business to LGC&D.

31.     Craig was instrumental in assisting LGC&D to submit a successful proposal because of his intimate knowledge of the engagement and his personal relationship with the client.

32.     To help LGC&D obtain Granite Telecom's business, Craig disclosed to LGC&D B&B's confidential information, including the rates and prices B&B charged Granite Telecom, the identities of and contact information for key Granite Telecom personnel, and Granite Telecom's likes, dislikes and needs. Craig also used this confidential B&B information to help prepare and submit LGC&D's bid to Granite Telecom and otherwise to try to obtain LGC&D's business.

33.     LGC&D knew that Craig had a contractual obligation not to solicit or divert any clients from B&B for two years after the end of his employment. Nevertheless, LGC&D

- 6 -

authorized, encouraged and instructed Craig to solicit, attempt to influence and influence Granite Telecom to use LGC&D's services rather than B&B's services.

34.    LGC&D knew that Craig had confidential B&B information that he had contractual and common law obligations not to use or disclose. Nevertheless, LGC&D authorized, encouraged and instructed Craig to use such confidential B&B information to help prepare and submit LGC&D's bid to Granite Telecom and otherwise to try to obtain LGC&D's business.

35.    Craig and LGC&D continue to do business with Granite Telecom and divert business from B&B. Craig continues to work on this client while employed by LGC&D.

36.    Craig's Employment Agreement contains no restrictions on Craig continuing to work as an accountant on his own or for another accounting firm so long as he does not solicit or divert B&B clients or use or disclose B&B confidential information.

**COUNT I**
**Breach of Employment Agreement**
**(Craig)**

37.    B&B repeats and re-alleges the allegations contained in the preceding paragraphs.

38.    Craig executed an Employment Agreement with B&B in which he promised, for two years after the end of his employment with B&B, not to solicit B&B's clients and not to influence or attempt to influence B&B's clients to divert their business elsewhere. Craig also promised, in the Employment Agreement, not to use or disclose B&B's confidential information.

39.    Craig violated the Employment Agreement by soliciting, attempting to influence and influencing one or more B&B clients to move their business from B&B to LGC&D.

40.    Craig also violated the Employment Agreement by using and disclosing B&B's confidential information, including without limitation confidential information relating to B&B's

- 7 -

work for Granite Telecom and the pricing and specific issues pertaining to the servicing of this engagement.

41.     As a result of Craig's actions, B&B has been damaged and continues to incur damages.

## COUNT II
### Breach of the Duty of Loyalty
### (Craig)

42.     B&B repeats and re-alleges the allegations contained in the preceding paragraphs.

43.     By virtue of Craig's employment relationship with B&B, Craig owed B&B a duty of loyalty.

44.     Craig has violated his duty of loyalty by using and disclosing B&B's confidential information, including without limitation confidential information relating to B&B's work for Granite Telecom, to benefit himself and LGC&D.

45.     As a result of Craig's action, B&B has been, and continues to be, damaged.

## COUNT III
### Tortious Interference With Contractual and/or Advantageous Business Relations
### (Craig and LGC&D)

46.     B&B repeats and re-alleges the allegations contained in the preceding paragraphs.

47.     B&B had contracts and/or advantageous business relations with its clients.

48.     Craig and LGC&D knew that B&B had contractual and/or advantageous business relations with B&B's clients.

49.     By virtue of the conduct described above, Craig and LGC&D have interfered with B&B's contracts and advantageous business relations with one or more of B&B's clients.

50.     Such interference was conducted by improper means and for an improper purpose, and was intentional, malicious and without legal justification.

- 8 -

B0408756

51.    As a direct and proximate result of Craig's and LGC&D's conduct, B&B has suffered and continues to suffer damages.

## COUNT IV
### Tortious Interference with B&B's Contractual Relationship with Craig
### (LGC&D)

52.    B&B repeats and re-alleges the allegations contained in the preceding paragraphs.

53.    B&B and Craig had a contractual relationship, memorialized in Craig's Employment Agreement with B&B, that prohibited Craig from soliciting, influencing or attempting to influence B&B's clients for two years after the end of his employment with B&B.

54.    LGC&D knew that Craig's Employment Agreement with B&B prohibited Craig from soliciting, influencing or attempting to influence B&B's clients for two years after the end of his employment with B&B and prohibited him from using or disclosing B&B's confidential information.

55.    LGC&D interfered with B&B's contractual relationship with Craig by encouraging, assisting and instructing him to breach the Employment Agreement as described above.

56.    Such interference was conducted by improper means and for an improper purpose, and was intentional, malicious and without legal justification.

57.    As a direct and proximate result of LGC&D's conduct, B&B has suffered and continues to suffer damages.

## COUNT V
### G.L. c. 93A
### (LGC&D)

58.    B&B repeats and re-alleges the allegations contained in the preceding paragraphs.

59.    B&B is a person and engages in trade or commerce within the meaning of Mass. Gen. Laws c. 93A section 1.

- 9 -

60.    LGC&D is a person and engages in trade or commerce within the meaning of Mass. Gen. Laws c. 93A section 1.

61.    Craig's actions regarding Granite Telecom were taken on behalf of LGC&D, and LGC&D is responsible for those actions. Craig's and LGC&D's actions constitute unfair and deceptive acts and practices within the meaning of Mass. Gen. Laws c. 93A section 11.

62.    Craig's and LGC&D's actions occurred primarily and substantially in Massachusetts.

63.    Craig's and LGC&D's unfair and deceptive acts and practices were willful and knowing within the meaning of Mass. Gen. Laws c. 93A.

64.    As a direct and proximate result of this conduct, B&B has suffered and continues to suffer damages.

## REQUEST FOR RELIEF

WHEREFORE, B&B requests that the Court:

1.    Enter judgment on behalf of B&B and order Craig & LGC&D to pay damages to B&B in an amount to be determined at trial, together with all costs, interest, and reasonable attorneys' fees.

2.    With respect to Count Five, order LGC&D to pay double and/or treble damages, together with all costs, interest, and reasonable attorneys' fees.

- 10 -

B0408756

3.    Grant such other or additional relief in favor of B&B as the Court deems just and proper under the circumstances.

Respectfully submitted,
Plaintiff Brown & Brown, LLP
By its attorneys,

Patrick J. Bannon, BBO # 635523
Berin Sultan Romagnolo, BBO # 638375
Gadsby Hannah LLP
225 Franklin Street
Boston, MA 02110
(617) 345-7000

Dated: _April 20, 2005_

## DEMAND FOR JURY TRIAL

Plaintiff Brown & Brown, LLP hereby demands a trial by jury of all issues and claims so triable.

Respectfully submitted,
Plaintiff Brown & Brown, LLP
By its attorneys,

Patrick J. Bannon, BBO # 635523
Berin Sultan Romagnolo, BBO # 638375
Gadsby Hannah LLP
225 Franklin Street
Boston, MA 02110
(617) 345-7000

Dated: _April 20, 2005_

- 11 -

EMPLOYMENT AGREEMENT

This Employment Agreement is made and entered into between Brown & Brown, LLP, a Limited Liability Partnership duly organized and existing under the laws of the Commonwealth of Massachusetts ("Employer") and Bart Craig ("Employee")

The effective date of this Agreement is January 1, 2002.

INTENT OF THE PARTIES

It is the agreement of the parties to enter into an Employment Agreement and to set forth in this document the intent of the parties to this Agreement.

The parties hereby agree to the following:

1.    **Employment**

(a)    Employer hereby agrees to employ the Employee, and the Employee agrees to accept such employment upon the terms and conditions set forth below.

(b)(1)  During the term of this Employment Agreement, Employee will devote his full time and best efforts to his employment duties and perform diligently such duties as are or may, from time to time, be required.

(b)(2)  Full time shall be defined to mean the regularly established working hours of the Employer unless otherwise agreed by the Employer and Employee, plus such reasonable overtime as the requirements of the Employer to properly serve its clients, consistent with the standards of the accounting profession and the Employer.

(b)(3)  During the period of active employment as defined above, the Employer agrees to pay the Employee such compensation for the services of the Employee as is determined annually and which will be reviewed annually. All such compensation shall be subject to the customary federal and state income tax withholding and FICA withholding as required with respect to compensation paid to an Employee.

(b)(4)  The Employer agrees to pay for reasonable continuing education costs to maintain professional licenses for any Employee who works a minimum of fifty percent (50%) of full time and such costs will be borne pro rata for any employees who work less than fifty percent (50%) full time. Written prior approval for educational courses or seminars must be obtained from your manager.

(c)    Employee shall not, without the prior written consent of Employer, directly or indirectly, during the term of this Employment Agreement, other than in the performance of duties naturally inherent in the businesses of Employer or any subsidiary of Employer and in furtherance thereof, render services of a business, professional or commercial nature to any other person or firm, whether for compensation or otherwise.



1

For purposes of this Employment Agreement, all references herein to subsidiaries or affiliates of Employer shall be deemed to include references to subsidiaries or affiliates now or hereafter existing.

2.    **Terms and Position Held**

(a)    Employee shall be employed by Employer or any subsidiary or affiliates of the Employer as shall, from time to time, be assigned by Brown & Brown or any of its subsidiaries or affiliates.

(b)    The Employee shall be an employee at will.

(c)    The Employee, upon fourteen (14) day written notice may terminate this Agreement. The Employer may provide fourteen (14) days pay as a substitute for fourteen (14) days notice.

(d)    This Agreement shall be deemed to be terminated, and the relationship of Employer and Employee existing between the parties shall be deemed severed, upon the suspension, revocation or cancellation of the Employee's right to practice public accounting or law in the Commonwealth of Massachusetts, which shall be deemed to be a voluntary termination of his/her employment by the Employee.

(e)    During the period of active employment, as defined above, the Employee shall not undertake any Professional Services except for the benefit of the Employer unless the Employer shall consent thereto in writing, and shall not engage in any business or profession other than the rendition of services for and on behalf of the Employer except for family.

(f)    The Employee shall have no authority to enter into any contract binding upon the Employer or to create any obligation on the part of the Employer, except such as shall be specifically authorized by a majority of partners.

(g)    All fees, compensation, monies and other things of value charged by the Employer and received or realized as a result of the rendition of Professional Services by the Employee, shall belong to and be paid and delivered to the Employer.

(h)    Upon the termination of this Agreement or the Employee's employment with the Employer, the Employee shall not be entitled to keep or copy any documents of the Employer, including but not limited to, records, workpapers, mailing lists, rolodexes, or client lists of the Employer or its clients.

3.    **Compensation**

(a)    <u>Salary</u>. For all services rendered to Employer (and any subsidiary of Employer) during the term of this Employment Agreement, Employee shall receive from Employer an aggregate base salary while employed hereunder payable in installments

2.

consistent with Employer's payroll cycle. Base salary shall be annualized for any partial
year during the term hereof. Employee may from time to time receive such increases in
salary and bonuses as may be granted by the Employer. All payments made pursuant to
this Section 3(a) shall be subject to withholding and other applicable taxes.

    (b)    <u>Additional Benefits</u>. In addition to the compensation set forth herein,
Employee shall be entitled to such vacation privileges, hospitalization, insurance and
retirement plan benefits and such other similar employment privileges and benefits as are
afforded generally from time to time to all other employees of Employer.

4.    <u>Covenants and Confidential Information</u>

    Employee agrees that for so long as he is receiving compensation in accordance
with the provisions of this Employment Agreement and for a period of two (2) years
thereafter he will not, directly or indirectly, do or suffer any of the following:

    (a)    Solicit the business, trade or patronage of any of the clients or customers
of the Employer or its subsidiaries. However, Employee shall have, as an election, the
right to keep clients serviced by him or her so long as he or she pays to the Employer a
sum one and one-half (1 1/2) times the annual fees billed or accrued to client in the
preceding twelve (12) months or the twelve (12) month period following termination,
whichever is greater.

    This has been established as the fair market value of said portion of
Employer's practice deemed to be purchased by Employee. Employee will pay one-
twelfth (1/12) of projected purchase price every three (3) months commencing on the first
day of the fourth month immediately following the date of termination. Any amount not
so paid to the Employer will bear an interest rate of twelve percent (12%) per annum.
Employer will be permitted to review former Employee's billing records to verify
purchase price calculations.

    (b)    Divert or attempt to divert from the Employer any business whatsoever by
either influencing, attempting to influence or soliciting or attempting to solicit any of the
Employer's customers or clients or employees.

    (c)    Disclose in any way to any person, firm, corporation or any other
operation or entity, or use on Employee's own behalf, for any reason or purpose, any
information gained by Employee while in Employer's employ, including, without
limitation, Employer's client or customer lists, computer disks containing any
information relevant to the Employer, accounting and financial data, pricing and discount
practices, special programs relating to sales, service, training, products and equipment,
and the methods, techniques, devices and operations of Employer, as they may exist from
time to time.

    (d)    The Employee further agrees that for such period of two (2) years he/she
not to employ nor offer to employ or solicit employment of any person who was an
employee of the Employer at the termination of Employee's employment, or was an

3

employee of the Employer at any time during the one year prior to the termination of the Employee's employment. Nothing in the foregoing shall restrict the right of the employee to enter into full or part-time employment in any capacity with any person, firm, partnership or corporation who or which was a client of the Employer at any time during his/her employment.

However, if an Employee becomes employed by an existing or former client of the employer, said client must pay a professional recruitment fee to Employer at a rate of twenty per cent (20%) of Employees new starting compensation.

(e)    Upon termination of Employee's employment, Employee shall deliver to Employer all customer and client lists, manuals of any sort of Employer's and all copies thereof, and all other notes, records, memoranda, complete correspondence files and other papers, and all copies thereof, including computer disks, relating to the methods, techniques, devices and operations of Employer, and Employee agrees that Employee does not have nor can Employee acquire any property right therein or claim thereto or in the underlying confidential information.

5.    **Enforcement of Contract**

(a)    Employee expressly agrees and understands that the remedy at law for any breach by him/her of  Section 4 will be inadequate and that the damages flowing from such breach are not readily susceptible to being measured in monetary terms. Accordingly, it is acknowledged that upon adequate proof of Employee's violation of any legally enforceable provision of Section 4, Employer shall be entitled to immediate injunctive relief and may obtain a temporary order restraining any threatened or further breach. Nothing in Section 4 shall be deemed to limit Employer's remedy at law or in equity for any breach by Employee of any of the provision of such Section 4, which may be pursued or availed of by Employer.

(b)    In the event Employee shall violate any legally enforceable provision of Section 4 as to which there is a specific time period during which he/she is prohibited from taking certain actions or from engaging in certain activities, as set forth in such provision, then, in such event, such violation shall toll the running of such time period from the date of such violation until such violation shall cease.

(c)    Employee has carefully considered the nature and extent of the restrictions of this Agreement and the rights and remedies conferred upon Employer under Sections 4 and 5, and hereby acknowledges and agrees that the same are reasonable in time and territory, are designed to eliminate competition which otherwise would be unfair to Employer, do not stifle the inherent skill and experience of Employee, would not operate as a bar to Employee's sole means of support, are fully required to protect the legitimate interests of Employer and do not confer a benefit upon Employer disproportionate to the detriment to Employee.

4

6.    **Binding on Successors**

The rights and obligation of Employer under this Employment Agreement shall inure to the benefit of, and shall be binding upon, Employer and its successors and assigns, and the rights and obligations of Employee under this Employment Agreement shall inure to the benefit of, and shall be binding upon, Employee and his heirs, personal representatives and estate.

7.    **Notices**

Any notice to be given under this Employment Agreement shall be personally delivered in writing or shall have been deemed duly given after it is delivered to the United States Postal Service, postage prepaid, registered or certified, return receipt requested, or via overnight mail with proof of delivery, and if mailed to Employer, shall be addressed to Employer at its principal place of business, to the attention of the Managing Partner of Brown & Brown, LLP, and if mailed to Employee, shall be addressed to him at his home address last shown on the records of Employer, or at such other address or addresses as either Employer or Employee may hereafter designate in writing to the other.

8.    **Waiver**

The failure of either party to enforce any provision or provisions of this Employment Agreement shall not in any way be construed as a waiver of any such provision or provisions as to any future violation thereof, nor prevent that party thereafter from enforcing each and every other provision of this Employment Agreement. The rights granted the parties herein are cumulative and the waiver of any single remedy shall not constitute a waiver of such party's right to assert all other legal remedies available to it under the circumstances.

5

9.    **Supercedes Prior Agreements**.

This Employment Agreement supersedes all prior employment agreements and understanding between the parties and may be modified only in writing and signed by both parties.

IN WITNESS WHEREOF, the parties hereto have executed this Employment Agreement as of the date first above written.

BROWN & BROWN, LLP

By: _____

Title _____

Employee    2/12/01

6

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                    SUPERIOR COURT DEPARTMENT
                                                OF THE TRIAL COURT

```
                                   )
BROWN & BROWN LLP,                 )
                                   )
            Plaintiff,             )          CIVIL ACTION NO.: 05-1534-BLS
                                   )
v.                                 )
                                   )
BARTON CRAIG, and LEFKOWITZ,       )
GARFINKEL, CHAMPI & DERIENZO,      )
P.C.,                              )
                                   )
            Defendants.            )
                                   )
```

## STIPULATION EXTENDING TIME FOR DEFENDANT LEFKOWITZ, GARFINKEL, CHAMPI & DERIENZO, P.C. TO RESPOND TO THE COMPLAINT

Plaintiff Brown & Brown, LLP and defendant Lefkowitz, Garfinkel, Champi &

DeRienzo, P.C. ("LGC&D"), by their counsel, hereby stipulate and agree that LGC&D shall

have to and including Friday, May 27, 2005 to answer, move, or otherwise respond to the

Complaint filed in the above-captioned action.

BROWN & BROWN, LLP,                             LEFKOWITZ, GARFINKEL, CHAMPI
By its attorneys,                               & DREIENZO, P.C.,
                                                By its attorneys,


Patrick J. Bannon, BBO# 635523                  Robert M. Gault, BBO# 187240
Gadsby Hannah LLP                               Mintz Levin Cohn Ferris Glovsky
225 Franklin Street                              & Popeo PC
Boston, MA 02110                                One Financial Center
(617) 345-7000                                  Boston, MA 02111
                                                (617) 542-6000


Date: May 12, 2005                              Date: May 12, 2005

So ordered:


_____
Hon. Allan van Gestel

Dated:_____