*Suffolk Superior Civil # 05-1534*

FILED
CLERK'S OFFICE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
2005 MAY 17 P 3:48

**05 11016 NMG**

DISTRICT OF MASS.

BROWN & BROWN, LLP,                  )
                                     )
          Plaintiff,                 )          CIVIL ACTION NO.
                                     )
v.                                   )                    I hereby certify on 5/17/05 that the
                                     )                    foregoing document is true and correct copy of
BARTON CRAIG, and LEFKOWITZ          )                    ☐ electronic docket in the captioned case
GARFINKEL, CHAMPI & DERIENZO,        )                    ☐ electronically filed original filed on ___
P.C.,                                )                    ☐ original filed in my office on 5/17/05
                                     )                    Sarah A. Thornton
          Defendants.                )                    Clerk, U.S. District Court
                                     )                    District of Massachusetts
                                     )                    By: _____
                                                          Deputy Clerk

## NOTICE OF REMOVAL OF CIVIL ACTION

Pursuant to 28 U.S.C. §§ 1441, 1446 and Local Rule 81.1, Defendant Lefkowitz,

Garfinkel Champi & DeRienzo, P.C. ("LGC&D" or "Defendant") hereby notices the removal of

the above-captioned matter, Brown & Brown, LLP v. Barton Craig, and Lefkowitz, Garfinkel,

Champi & DeRienzo, P.C., Civil Action No. 05-1534-BLS (the "Action") from the Suffolk

Superior Court Department of the Trial Court of the Commonwealth of Massachusetts, to the

United States District Court for the District of Massachusetts. In support thereof, Defendant

states the following:

1.     Plaintiff Brown & Brown, LLP ("B&B" or "Plaintiff") commenced the Action

herein in the Superior Court of Massachusetts, Suffolk County on April 20, 2005.

2.     A copy of the Summons, Complaint, Corporate Disclosure Statement and the

Civil Action Cover Sheet served on Defendant on or about April 25, 2005, is attached as Exhibit

A. A Stipulation extending LGC&D's time to respond to the Complaint to May 27, 2005, filed

by the parties on May 11, 2005, is attached as Exhibit B. Taken together, Exhibits A and B

constitute all pleadings in the above-referenced action. Certified copies of the docket sheet and all pleadings and orders filed with the Suffolk Superior Court in the Action will be provided to this Court pursuant to Local Rule 81.1.

3.      B&B's Complaint purports to state claims against LGC&D for tortious interference with contractual and/or advantageous business relations and unfair and deceptive trade practices stemming from its subsequent employment of a former B&B employee, defendant Barton Craig ("Craig"). In particular, B&B alleges that it lost the business of a particular account, Granite Telecom, to LGC&D as a result of the actions of Craig in violation of an employment agreement.

4.      The Complaint seeks alleged damages including double and/or treble damages, together with costs, interest and fees.

5.      In accordance with 28 U.S.C. § 1446, this Notice of Removal has been filed within thirty (30) days after receipt of B&B's Complaint.

6.      This Court has original jurisdiction over this Action pursuant to 28 U.S.C. § 1332. B&B is an accounting firm with its principal place of business in the Commonwealth of Massachusetts. Defendant Craig is a citizen of the State of Rhode Island and defendant LGC&D is a corporation organized and existing under the laws of the State of Rhode Island with its principal place of business in the State of Rhode Island.

7.      Although not articulated in B&B's Complaint, the amount in controversy most certainly exceeds the sum of $75,000.00, exclusive of interest and costs, the jurisdictional amount under 28 U.S.C. § 1332. The value of the Granite Telecom account, whose business B&B alleges it lost as a result of the actions of the defendants, exceeds $75,000.00.

2

8.    By reason of the foregoing and pursuant to 28 U.S.C. § 1441(a), Defendant

wishes to exercise its right to have this Action removed from the Superior Court Department,

Commonwealth of Massachusetts, Suffolk, ss.

9.    Venue in this District is proper pursuant to 28 U.S.C. § 1441(a) and 28 U.S.C.

§ 1391(a).

10.    The time has not elapsed during which Defendant is entitled to file the Notice of

Removal pursuant to 28 U.S.C. § 1446.

11.    Defendant will provide a certified copy of this Notice of Removal to the Clerk of

the Court for the Suffolk Superior Court Department of the Trial Court for the Commonwealth of

Massachusetts.

Respectfully submitted,

LEFKOWITZ, GARFINKEL, CHAMPI &
DERIENZO, P.C.

By its attorneys,

Robert M. Gault, BBO #187240
Mintz, Levin, Cohn, Ferris, Glovsky,
and Popeo, P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000

Dated: May 17, 2005

3

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of May, 2005, I caused the foregoing Notice of Removal to be served by first class mail upon counsel for Plaintiff Brown & Brown LLP at the following address:

> Patrick J. Bannon, Esq.
> Gadsby Hannah LLP
> 225 Franklin Street
> Boston, MA 02110

Robert M. Gault, BBO# 187240

LIT 1520111v1

**4**

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

_____
                                )
BROWN & BROWN LLP,              )
                                )
        Plaintiff,              )        CIVIL ACTION NO.: 05-1534-BLS
                                )
v.                              )
                                )
BARTON CRAIG, and LEFKOWITZ,    )
GARFINKEL, CHAMPI & DERIENZO,   )
P.C.,                           )
                                )
        Defendants.             )
_____)

## NOTICE OF FILING OF NOTICE OF REMOVAL

Defendant Lefkowitz, Garfinkel, Champi & DeRienzo, P.C. gives notice that it has filed

in the United States District Court for the District of Massachusetts a Notice of Removal of the

above-entitled action, a certified copy of which is attached hereto as Exhibit A.

Dated: May 18, 2005            By:    _____
                                      Robert M. Gault, BBO #187240
                                      Mintz, Levin, Cohn, Ferris, Glovsky,
                                        and Popeo, P.C.
                                      One Financial Center
                                      Boston, MA 02111
                                      (617) 542-6000

                                      Attorneys for Defendant Lefkowitz,
                                      Garfinkel, Champi & DeRienzo, P.C.

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of May, 2005, I caused the foregoing Notice of Filing of Notice of Removal to be served by first class mail upon counsel for Plaintiff Brown & Brown LLP at the following address:

> Patrick J. Bannon, Esq.
> Gadsby Hannah LLP
> 225 Franklin Street
> Boston, MA 02110

Robert M. Gault, BBO# 187240

MAS-20030912
guen

Case 1:05-cv-11016-NMG    Document 4    Filed 06/02/2005    Page 7 of 26

**Commonwealth of Massachusetts**
**SUFFOLK SUPERIOR COURT**
**Case Summary**
**Civil Docket**

05/19/2005
10:19 AM

## SUCV2005-01534
## Brown & Brown LLP v Craig et al

| | | | |
|---|---|---|---|
| **File Date** | 04/20/2005 | **Status** | Disposed: transfered to other court (dtrans) |
| **Status Date** | 05/19/2005 | **Session** | BLS - CtRm 1309, 3 Pemberton Square, Boston |
| **Origin** | 1 | **Case Type** | BD2 - Proprietary or trade secrets |
| **Lead Case** | | **Track** | B |

| | | | |
|---|---|---|---|
| **Service** | | **Answer** | **Rule12/19/20** |
| **Rule 15** | | **Discovery** | **Rule 56** |
| **Final PTC** | | **Disposition** | **Jury Trial**   Yes |

### PARTIES

**Plaintiff**
Brown & Brown LLP
Active 04/20/2005

Private Counsel 635523
Patrick J Bannon
Gadsby Hannah LLP
225 Franklin Street
22nd floor
Boston, MA 02110-2811
Phone: 617-345-7029
Fax: 617-345-8029
Active 04/20/2005 Notify

**Defendant**
Barton Craig
Service pending 04/20/2005

**Defendant**
Lefkowitz,Garfinkel,Champi & Derienzo PC
Service pending 04/20/2005

Private Counsel 187240
Robert M Gault
Mintz Levin Cohn Ferris Glovsky & Popeo
PC
1 Financial Center
39th floor
Boston, MA 02111
Phone: 617-542-6000
Fax: 617-542-2241
Active 05/13/2005 Notify

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 04/20/2005 | 1.0 | Complaint (Business) |
| 04/20/2005 | | Origin 1, Type BD2, Track B. |
| 04/20/2005 | 2.0 | Civil action cover sheet filed |
| 05/12/2005 | 3.0 | Stipulation to extend time for Lefkowitz,Garfinkel,Champi & Derienzo PC to file an answer/responsive pleading to the complaint to and including May 27, 2005 |
| 05/18/2005 | | Certified copy of pertition for removal to U. S. Dist. Court of Deft. Lefkowitz, Garfinkel, Champi & DeRienzo, P. C. U. S. Dist.#(05-11016NMG). |
| 05/19/2005 | | Case REMOVED this date to US District Court of Massachusetts |

MAY 19, 2005 , THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:

ASSISTANT CLERK.

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                            SUPERIOR COURT DEPARTMENT
                                       OF THE TRIAL COURT

```
                                  )
BROWN & BROWN, LLP,               )
                                  )
            Plaintiff,            )
                                  )
v.                                )
                                  )       C.A. No.
BARTON CRAIG, and LEFKOWITZ,      )
GARFINKEL, CHAMPI & DERIENZO,     )
P.C.,                             )
                                  )
            Defendants.           )
                                  )
```

## COMPLAINT

### INTRODUCTION

1.      Brown & Brown, LLP ("B&B"), an accounting firm, brings this action against its former employee, Barton Craig ("Craig"), and his new employer, Lefkowitz, Garfinkel, Champi & DeRienzo, P.C. ("LGC&D").

2.      Craig promised B&B in writing that for two years after his employment ended he would not solicit business from B&B's clients or do anything directly or indirectly to divert any of the clients from B&B. Relying on Craig's promises, B&B introduced him to, and encouraged him to develop strong relationships with, a number of valuable B&B clients.

3.      In July 2004, Craig resigned from B&B to work for LGC&D. Despite his promises, Craig has successfully solicited at least one long-standing B&B client to transfer its business to LGC&D. LGC&D knew that Craig had promised not to solicit or divert B&B's clients. Nevertheless, it has encouraged and assisted Craig to breach those promises. B&B has suffered substantial damages.

B0406687v1

## PARTIES

4.      Brown & Brown, LLP ("B&B") is an accounting firm with a principal office at 90 Canal Street in Boston, Massachusetts, and another office in Westborough, Massachusetts.

5.      Defendant Barton Craig ("Craig") is an individual who lives at 81 Barnes Street, Providence, Rhode Island. Until July, 2004, Craig worked for B&B in Boston, Massachusetts. Craig now works for LGC&D, where he continues to provide services to clients in Massachusetts.

6.      Defendant Lefkowitz, Garfinkel, Champi & DeRienzo, P.C. ("LGC&D") is an accounting firm located at 10 Weybosset Street, Providence, Rhode Island. LGC&D provides services to clients throughout New England, including clients that are located in Massachusetts.

## FACTS

### B&B's Reputation and Client Relationships

7.      B&B is a full-service accounting firm with more than 80 employees and two offices. B&B has been a leader in New England in providing auditing, tax and consulting services to clients of all sizes in a wide range of industries. Over its 20-year history, B&B has earned a reputation for providing services of the highest quality.

8.      B&B spends significant money and employee time developing and maintaining strong positive relationships with key individuals at clients and prospective clients. In the accounting business, such relationships are critical to obtaining and keeping clients.

9.      In order to provide services efficiently, B&B frequently assigns responsibility for a client's work to persons other than the person who brought the client to B&B. B&B encourages all of the employees who work with a client to develop a strong relationship and work closely with the client.

- 2 -

B0408756

10.     To protect itself from losing clients when employees leave, B&B requires its
employees, as a condition of employment, to promise in writing not to solicit or divert clients
from B&B for a period of time after the end of their employment.

11.     If B&B were unable to prevent former employees from soliciting or diverting its
clients for a period of time after the end of the employees' employment, B&B personnel who
bring clients to the firm would be reluctant to allow other employees of the firm to work closely
with the clients. The result would be that B&B would provide its services less efficiently.

#### B&B's Relationship with the Hale Family and Their Businesses

12.     In about 1993, B&B began providing tax and accounting services to a
Massachusetts-based telecommunications company called Network Plus, Inc. In or about June
1999, Network Plus became a publicly traded company.

13.     Network Plus was founded by Robert T. Hale, Sr. and Robert T. Hale, Jr. In
about 1993, B&B began providing accounting services to the Hale family.

14.     In or about 2002, Network Plus failed. Shortly thereafter, Robert T Hale, Sr. and
Robert T. Hale, Jr. co-founded another telecommunications company called Granite
Telecommunications, LLC ("Granite Telecom"). Granite Telecom is based in Quincy,
Massachusetts.

15.     B&B provided accounting services to Granite Telecom from its inception. In
addition, B&B continued providing accounting services to the Hale family.

16.     B&B's work for the Hale family and their businesses has provided B&B with
significant annual revenues since 1993.

#### B&B Hires Craig and Craig Promises Not to Solicit or Divert B&B's Clients

17.     On or about January 10, 2000, B&B hired Craig as an accountant. Craig's title
was tax supervisor or tax manager.

- 3 -

18.    At the beginning of his employment and as a condition of employment, Craig

entered into an employment agreement with B&B. Effective on July 21, 2000, Craig and B&B

entered into a superseding employment agreement. Effective on January 1, 2002, Craig and

B&B again entered into a superseding employment agreement.

19.    The January 1, 2002 employment agreement (the "Employment Agreement")

remained in effect through the end of Craig's employment and has never been superseded,

amended or canceled. For convenience, a copy of the Employment Agreement is attached hereto

as Exhibit A.

20.    In Section 4 of the Employment Agreement, Craig promised that for a period of

two years after the end of Craig's employment with B&B, he would not directly or indirectly:

> "(a)    Solicit the business, trade or patronage of any of the clients or
> customers of [Brown & Brown] or its subsidiaries. . . .
>
> . . . .
>
> "(b)    Divert or attempt to divert from [Brown & Brown] any business
> whatsoever by either influencing, attempting to influence or soliciting
> or attempting to solicit any of [Brown & Brown's] customers or
> clients or employees.
>
> "(c)    Disclose in any way to any person, firm, corporation or any other
> operation or entity, or use on [his] own behalf, for any reason or
> purpose, any information gained by [him] while in [Brown &
> Brown's] employ, including without limitation, [Brown & Brown's]
> client or customer lists, computer disks containing any information
> relevant to [Brown & Brown's], accounting and financial data, pricing
> and discount practices, special programs relating to sales, service,
> training, products and equipment, and the methods, techniques,
> devices and operations of [Brown & Brown's] as they may exist from
> time to time."

- 4 -

**B&B Introduces Craig to Many of Its Clients, Including Granite Telecom.**

21.    Relying on Craig's promises not to solicit or divert its clients, B&B introduced Craig to, and encouraged him to develop and maintain strong relationships with, a number of B&B's clients.

22.    B&B assigned Craig to be the tax manager for a number of B&B's clients. As tax manager, Craig had day-to-day responsibility for helping clients prepare their tax returns and handle other tax-related accounting issues. He worked closely with key personnel at each client.

23.    In 2000, B&B introduced Craig to key personnel at Granite Telecom and assigned him to be the tax manager for the Granite Telecom account. Craig served as the tax manager of the Granite Telecom account through the end of his employment. With B&B's encouragement, Craig worked closely with and developed good relationships with a number of key Granite Telecom employees, including Garrett McGurrin and Rand Currier.

**Craig Had Access To B&B's Confidential and Proprietary Information.**

24.    As a B&B tax supervisor, Craig had access to various forms of B&B's confidential and proprietary business information, including without limitation: the rates B&B's normally charged for its services; the prices B&B charged particular clients for particular projects; B&B's billing practices and pricing for the Granite Telecom engagement, the identities and contact information of key personnel at B&B's clients and prospects; and the particular likes, dislikes and needs of B&B clients. In particular, Craig had all of this information for Granite Telecom.

25.    B&B protected this information by, among other measures, adopting policies forbidding employees to use or disclose such information, using passwords to protect information contained on B&B's computer system, and requiring employees to enter into written agreements promising not to use or disclose such information.

- 5 -

## Craig Resigns and Breaches His Obligations to B&B

26. On or about July 23, 2004, Craig voluntarily resigned from B&B to join LGC&D, an accounting firm that is a direct competitor of B&B.

27. In violation of his Employment Agreement, Craig solicited, attempted to influence and influenced Granite Telecom to use LGC&D's services rather than B&B's services.

28. Soon after Craig's departure from B&B, Granite Telecom notified B&B that it was putting its business out to bid. The only firm other than B&B invited to bid was LGC&D.

29. LGC&D and B&B submitted proposals to Granite Telecom. Craig helped prepare and present LGC&D's proposal to Granite Telecom and discussed LGC&D's proposal with Granite Telecom.

30. Shortly after receiving bids from LGC&D and B&B, Granite Telecom moved its business to LGC&D.

31. Craig was instrumental in assisting LGC&D to submit a successful proposal because of his intimate knowledge of the engagement and his personal relationship with the client.

32. To help LGC&D obtain Granite Telecom's business, Craig disclosed to LGC&D B&B's confidential information, including the rates and prices B&B charged Granite Telecom, the identities of and contact information for key Granite Telecom personnel, and Granite Telecom's likes, dislikes and needs. Craig also used this confidential B&B information to help prepare and submit LGC&D's bid to Granite Telecom and otherwise to try to obtain LGC&D's business.

33. LGC&D knew that Craig had a contractual obligation not to solicit or divert any clients from B&B for two years after the end of his employment. Nevertheless, LGC&D

- 6 -

authorized, encouraged and instructed Craig to solicit, attempt to influence and influence Granite Telecom to use LGC&D's services rather than B&B's services.

34.    LGC&D knew that Craig had confidential B&B information that he had contractual and common law obligations not to use or disclose. Nevertheless, LGC&D authorized, encouraged and instructed Craig to use such confidential B&B information to help prepare and submit LGC&D's bid to Granite Telecom and otherwise to try to obtain LGC&D's business.

35.    Craig and LGC&D continue to do business with Granite Telecom and divert business from B&B. Craig continues to work on this client while employed by LGC&D.

36.    Craig's Employment Agreement contains no restrictions on Craig continuing to work as an accountant on his own or for another accounting firm so long as he does not solicit or divert B&B clients or use or disclose B&B confidential information.

## COUNT I
## Breach of Employment Agreement
## (Craig)

37.    B&B repeats and re-alleges the allegations contained in the preceding paragraphs.

38.    Craig executed an Employment Agreement with B&B in which he promised, for two years after the end of his employment with B&B, not to solicit B&B's clients and not to influence or attempt to influence B&B's clients to divert their business elsewhere. Craig also promised, in the Employment Agreement, not to use or disclose B&B's confidential information.

39.    Craig violated the Employment Agreement by soliciting, attempting to influence and influencing one or more B&B clients to move their business from B&B to LGC&D.

40.    Craig also violated the Employment Agreement by using and disclosing B&B's confidential information, including without limitation confidential information relating to B&B's

- 7 -

B0408756

work for Granite Telecom and the pricing and specific issues pertaining to the servicing of this engagement.

41.    As a result of Craig's actions, B&B has been damaged and continues to incur damages.

## COUNT II
### Breach of the Duty of Loyalty
### (Craig)

42.    B&B repeats and re-alleges the allegations contained in the preceding paragraphs.

43.    By virtue of Craig's employment relationship with B&B, Craig owed B&B a duty of loyalty.

44.    Craig has violated his duty of loyalty by using and disclosing B&B's confidential information, including without limitation confidential information relating to B&B's work for Granite Telecom, to benefit himself and LGC&D.

45.    As a result of Craig's action, B&B has been, and continues to be, damaged.

## COUNT III
### Tortious Interference With Contractual and/or Advantageous Business Relations
### (Craig and LGC&D)

46.    B&B repeats and re-alleges the allegations contained in the preceding paragraphs.

47.    B&B had contracts and/or advantageous business relations with its clients.

48.    Craig and LGC&D knew that B&B had contractual and/or advantageous business relations with B&B's clients.

49.    By virtue of the conduct described above, Craig and LGC&D have interfered with B&B's contracts and advantageous business relations with one or more of B&B's clients.

50.    Such interference was conducted by improper means and for an improper purpose, and was intentional, malicious and without legal justification.

- 8 -

B0408756

51.    As a direct and proximate result of Craig's and LGC&D's conduct, B&B has

suffered and continues to suffer damages.

## COUNT IV
### Tortious Interference with B&B's Contractual Relationship with Craig
### (LGC&D)

52.    B&B repeats and re-alleges the allegations contained in the preceding paragraphs.

53.    B&B and Craig had a contractual relationship, memorialized in Craig's

Employment Agreement with B&B, that prohibited Craig from soliciting, influencing or

attempting to influence B&B's clients for two years after the end of his employment with B&B.

54.    LGC&D knew that Craig's Employment Agreement with B&B prohibited Craig

from soliciting, influencing or attempting to influence B&B's clients for two years after the end

of his employment with B&B and prohibited him from using or disclosing B&B's confidential

information.

55.    LGC&D interfered with B&B's contractual relationship with Craig by

encouraging, assisting and instructing him to breach the Employment Agreement as described

above.

56.    Such interference was conducted by improper means and for an improper

purpose, and was intentional, malicious and without legal justification.

57.    As a direct and proximate result of LGC&D's conduct, B&B has suffered and

continues to suffer damages.

## COUNT V
### G.L. c. 93A
### (LGC&D)

58.    B&B repeats and re-alleges the allegations contained in the preceding paragraphs.

59.    B&B is a person and engages in trade or commerce within the meaning of Mass.

Gen. Laws c. 93A section 1.

- 9 -

B0408756

60.     LGC&D is a person and engages in trade or commerce within the meaning of Mass. Gen. Laws c. 93A section 1.

61.     Craig's actions regarding Granite Telecom were taken on behalf of LGC&D, and LGC&D is responsible for those actions. Craig's and LGC&D's actions constitute unfair and deceptive acts and practices within the meaning of Mass. Gen. Laws c. 93A section 11.

62.     Craig's and LGC&D's actions occurred primarily and substantially in Massachusetts.

63.     Craig's and LGC&D's unfair and deceptive acts and practices were willful and knowing within the meaning of Mass. Gen. Laws c. 93A.

64.     As a direct and proximate result of this conduct, B&B has suffered and continues to suffer damages.

## REQUEST FOR RELIEF

WHEREFORE, B&B requests that the Court:

1.     Enter judgment on behalf of B&B and order Craig & LGC&D to pay damages to B&B in an amount to be determined at trial, together with all costs, interest, and reasonable attorneys' fees.

2.     With respect to Count Five, order LGC&D to pay double and/or treble damages, together with all costs, interest, and reasonable attorneys' fees.

- 10 -

3.    Grant such other or additional relief in favor of B&B as the Court deems just and

proper under the circumstances.

Respectfully submitted,
Plaintiff Brown & Brown, LLP
By its attorneys,

Patrick J. Bannon, BBO # 635523
Berin Sultan Romagnolo, BBO # 638375
Gadsby Hannah LLP
225 Franklin Street
Boston, MA 02110
(617) 345-7000

Dated: _April 20, 2005_

## DEMAND FOR JURY TRIAL

Plaintiff Brown & Brown, LLP hereby demands a trial by jury of all issues and

claims so triable.

Respectfully submitted,
Plaintiff Brown & Brown, LLP
By its attorneys,

Patrick J. Bannon, BBO # 635523
Berin Sultan Romagnolo, BBO # 638375
Gadsby Hannah LLP
225 Franklin Street
Boston, MA 02110
(617) 345-7000

Dated: _April 20, 2005_

I HEREBY ATTEST AND CERTIFY ON
MAY 19, 2005 THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT
BY

ASSISTANT CLERK.

- 11 -

EX A

## EMPLOYMENT AGREEMENT

This Employment Agreement is made and entered into between Brown & Brown, LLP, a Limited Liability Partnership duly organized and existing under the laws of the Commonwealth of Massachusetts ("Employer") and Bart Craig ("Employee")

The effective date of this Agreement is January 1, 2002.

### INTENT OF THE PARTIES

It is the agreement of the parties to enter into an Employment Agreement and to set forth in this document the intent of the parties to this Agreement.

The parties hereby agree to the following:

1. **Employment**

(a)    Employer hereby agrees to employ the Employee, and the Employee agrees to accept such employment upon the terms and conditions set forth below.

(b)(1)  During the term of this Employment Agreement, Employee will devote his full time and best efforts to his employment duties and perform diligently such duties as are or may, from time to time, be required.

(b)(2)  Full time shall be defined to mean the regularly established working hours of the Employer unless otherwise agreed by the Employer and Employee, plus such reasonable overtime as the requirements of the Employer to properly serve its clients, consistent with the standards of the accounting profession and the Employer.

(b)(3)  During the period of active employment as defined above, the Employer agrees to pay the Employee such compensation for the services of the Employee as is determined annually and which will be reviewed annually. All such compensation shall be subject to the customary federal and state income tax withholding and FICA withholding as required with respect to compensation paid to an Employee.

(b)(4)  The Employer agrees to pay for reasonable continuing education costs to maintain professional licenses for any Employee who works a minimum of fifty percent (50%) of full time and such costs will be borne pro rata for any employees who work less than fifty percent (50%) full time. Written prior approval for educational courses or seminars must be obtained from your manager.



(c)    Employee shall not, without the prior written consent of Employer, directly or indirectly, during the term of this Employment Agreement, other than in the performance of duties naturally inherent in the businesses of Employer or any subsidiary of Employer and in furtherance thereof, render services of a business, professional or commercial nature to any other person or firm, whether for compensation or otherwise.

1

For purposes of this Employment Agreement, all references herein to subsidiaries or affiliates of Employer shall be deemed to include references to subsidiaries or affiliates now or hereafter existing.

## 2.    Terms and Position Held

(a)    Employee shall be employed by Employer or any subsidiary or affiliates of the Employer as shall, from time to time, be assigned by Brown & Brown or any of its subsidiaries or affiliates.

(b)    The Employee shall be an employee at will.

(c)    The Employee, upon fourteen (14) day written notice may terminate this Agreement. The Employer may provide fourteen (14) days pay as a substitute for fourteen (14) days notice.

(d)    This Agreement shall be deemed to be terminated, and the relationship of Employer and Employee existing between the parties shall be deemed severed, upon the suspension, revocation or cancellation of the Employee's right to practice public accounting or law in the Commonwealth of Massachusetts, which shall be deemed to be a voluntary termination of his/her employment by the Employee.

(e)    During the period of active employment, as defined above, the Employee shall not undertake any Professional Services except for the benefit of the Employer unless the Employer shall consent thereto in writing, and shall not engage in any business or profession other than the rendition of services for and on behalf of the Employer except for family.

(f)    The Employee shall have no authority to enter into any contract binding upon the Employer or to create any obligation on the part of the Employer, except such as shall be specifically authorized by a majority of partners.

(g)    All fees, compensation, monies and other things of value charged by the Employer and received or realized as a result of the rendition of Professional Services by the Employee, shall belong to and be paid and delivered to the Employer.

(h)    Upon the termination of this Agreement or the Employee's employment with the Employer, the Employee shall not be entitled to keep or copy any documents of the Employer, including but not limited to, records, workpapers, mailing lists, rolodexes, or client lists of the Employer or its clients.

## 3.    Compensation

(a)    Salary. For all services rendered to Employer (and any subsidiary of Employer) during the term of this Employment Agreement, Employee shall receive from Employer an aggregate base salary while employed hereunder payable in installments

2

consistent with Employer's payroll cycle. Base salary shall be annualized for any partial year during the term hereof. Employee may from time to time receive such increases in salary and bonuses as may be granted by the Employer. All payments made pursuant to this Section 3(a) shall be subject to withholding and other applicable taxes.

(b)    Additional Benefits. In addition to the compensation set forth herein, Employee shall be entitled to such vacation privileges, hospitalization, insurance and retirement plan benefits and such other similar employment privileges and benefits as are afforded generally from time to time to all other employees of Employer.

4.    **Covenants and Confidential Information**

Employee agrees that for so long as he is receiving compensation in accordance with the provisions of this Employment Agreement and for a period of two (2) years thereafter he will not, directly or indirectly, do or suffer any of the following:

(a)    Solicit the business, trade or patronage of any of the clients or customers of the Employer or its subsidiaries. However, Employee shall have, as an election, the right to keep clients serviced by him or her so long as he or she pays to the Employer a sum one and one-half (1 1/2) times the annual fees billed or accrued to client in the preceding twelve (12) months or the twelve (12) month period following termination, whichever is greater.

This has been established as the fair market value of said portion of Employer's practice deemed to be purchased by Employee. Employee will pay one-twelfth (1/12) of projected purchase price every three (3) months commencing on the first day of the fourth month immediately following the date of termination. Any amount not so paid to the Employer will bear an interest rate of twelve percent (12%) per annum. Employer will be permitted to review former Employee's billing records to verify purchase price calculations.

(b)    Divert or attempt to divert from the Employer any business whatsoever by either influencing, attempting to influence or soliciting or attempting to solicit any of the Employer's customers or clients or employees.

(c)    Disclose in any way to any person, firm, corporation or any other operation or entity, or use on Employee's own behalf, for any reason or purpose, any information gained by Employee while in Employer's employ, including, without limitation, Employer's client or customer lists, computer disks containing any information relevant to the Employer, accounting and financial data, pricing and discount practices, special programs relating to sales, service, training, products and equipment, and the methods, techniques, devices and operations of Employer, as they may exist from time to time.

(d)    The Employee further agrees that for such period of two (2) years he/she not to employ nor offer to employ or solicit employment of any person who was an employee of the Employer at the termination of Employee's employment, or was an

employee of the Employer at any time during the one year prior to the termination of the Employee's employment. Nothing in the foregoing shall restrict the right of the employee to enter into full or part-time employment in any capacity with any person, firm, partnership or corporation who or which was a client of the Employer at any time during his/her employment.

 However, if an Employee becomes employed by an existing or former client of the employer, said client must pay a professional recruitment fee to Employer at a rate of twenty per cent (20%) of Employees new starting compensation.

(e)     Upon termination of Employee's employment, Employee shall deliver to Employer all customer and client lists, manuals of any sort of Employer's and all copies thereof, and all other notes, records, memoranda, complete correspondence files and other papers, and all copies thereof, including computer disks, relating to the methods, techniques, devices and operations of Employer, and Employee agrees that Employee does not have nor can Employee acquire any property right therein or claim thereto or in the underlying confidential information.

### 5.    Enforcement of Contract

(a)     Employee expressly agrees and understands that the remedy at law for any breach by him/her of Section 4 will be inadequate and that the damages flowing from such breach are not readily susceptible to being measured in monetary terms. Accordingly, it is acknowledged that upon adequate proof of Employee's violation of any legally enforceable provision of Section 4, Employer shall be entitled to immediate injunctive relief and may obtain a temporary order restraining any threatened or further breach. Nothing in Section 4 shall be deemed to limit Employer's remedy at law or in equity for any breach by Employee of any of the provision of such Section 4, which may be pursued or availed of by Employer.

(b)     In the event Employee shall violate any legally enforceable provision of Section 4 as to which there is a specific time period during which he/she is prohibited from taking certain actions or from engaging in certain activities, as set forth in such provision, then, in such event, such violation shall toll the running of such time period from the date of such violation until such violation shall cease.

(c)     Employee has carefully considered the nature and extent of the restrictions of this Agreement and the rights and remedies conferred upon Employer under Sections 4 and 5, and hereby acknowledges and agrees that the same are reasonable in time and territory, are designed to eliminate competition which otherwise would be unfair to Employer, do not stifle the inherent skill and experience of Employee, would not operate as a bar to Employee's sole means of support, are fully required to protect the legitimate interests of Employer and do not confer a benefit upon Employer disproportionate to the detriment to Employee.

6.    **Binding on Successors**

The rights and obligation of Employer under this Employment Agreement shall inure to the benefit of, and shall be binding upon, Employer and its successors and assigns, and the rights and obligations of Employee under this Employment Agreement shall inure to the benefit of, and shall be binding upon, Employee and his heirs, personal representatives and estate.

7.    **Notices**

Any notice to be given under this Employment Agreement shall be personally delivered in writing or shall have been deemed duly given after it is delivered to the United States Postal Service, postage prepaid, registered or certified, return receipt requested, or via overnight mail with proof of delivery, and if mailed to Employer, shall be addressed to Employer at its principal place of business, to the attention of the Managing Partner of Brown & Brown, LLP, and if mailed to Employee, shall be addressed to him at his home address last shown on the records of Employer, or at such other address or addresses as either Employer or Employee may hereafter designate in writing to the other.

8.    **Waiver**

The failure of either party to enforce any provision or provisions of this Employment Agreement shall not in any way be construed as a waiver of any such provision or provisions as to any future violation thereof, nor prevent that party thereafter from enforcing each and every other provision of this Employment Agreement. The rights granted the parties herein are cumulative and the waiver of any single remedy shall not constitute a waiver of such party's right to assert all other legal remedies available to it under the circumstances.

5

9.    **Supercedes Prior Agreements**.

This Employment Agreement supersedes all prior employment agreements and understanding between the parties and may be modified only in writing and signed by both parties.

IN WITNESS WHEREOF, the parties hereto have executed this Employment Agreement as of the date first above written.

BROWN & BROWN, LLP

By: _____

Title _____

_____
Employee                    2/12/01

| CIVIL ACTION COVER SHEET | B.L.S. 05-1531 | Trial Court of Massachusetts Superior Court Department County: SUFFOLK |
|---|---|---|

| PLAINTIFF(S) Brown & Brown, LLP | DEFENDANT(S) Barton Craig and Lefkowitz, Garfinkel, Champi & DeRienzo, PC |
|---|---|
| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE Patrick J. Bannon, Berin S. Romagnolo, Gadsby Hannah LLP, 225 Franklin St., Boston, MA 02110  617-345-7000 Board of Bar Overseers number 635523 & 638375 respectively | ATTORNEY (if known) |

## Origin Code

### Original Complaint

## TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify)   TRACK | IS THIS A JURY CASE? |
|---|---|---|
| D2 | Non-soliciation Agreement (*B) | ( x )Yes     ( ) No |

**The following is a full and detailed statement of the facts on which plaintiff relies to determine eligibility in to The Business Litigation Session.**

Defendant Barton Craig was a tax manager or supervisor with the plaintiff Brown & Brown, LLP's accounting firm. He executed an Employment Agreement with Brown & Brown agreeing not to solicit or divert Brown & Brown's clients for a limited amount of time and to refrain from divulging or using Brown & Brown's confidential information. Mr. Craig resigned from Brown & Brown and, shortly thereafter, joined a competing accounting firm, defendant Lefkowitz, Garfinkel, Champi & DeRienzo, PC ("LGC&D"). There, he successfully solicited at least one of Brown & Brown's clients,& disclosed and used Brown & Brown's confidential information, thereby damaging Brown & Brown's business relationships and causing other on-going damage. Mr. Craig's new employer, LGC&D, knew of Mr. Craig's Employment Agreement with Brown & Brown, but, nevertheless, encouraged and assisted Mr. Craig to breach his obligations to Brown & Brown.

**\*A Special Tracking Order shall be created by the Presiding Justice of the Business Litigation Session at the Rule 16 Conference.**

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT    None

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____   DATE: 2/20/05

AOTC-6 mtc005-11/99
OSC 1-2000

I HEREBY ATTEST AND CERTIFY ON
MAY 19, 2005 , THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____

ASSISTANT  CLERK.

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

**3**

|  |  |
|---|---|
| BROWN & BROWN LLP,<br><br>        Plaintiff,<br><br>v.<br><br>BARTON CRAIG, and LEFKOWITZ,<br>GARFINKEL, CHAMPI & DERIENZO,<br>P.C.,<br><br>        Defendants. | CIVIL ACTION NO.: 05-1534-BLS |

### STIPULATION EXTENDING TIME FOR DEFENDANT LEFKOWITZ, GARFINKEL, CHAMPI & DERIENZO, P.C. TO RESPOND TO THE COMPLAINT

Plaintiff Brown & Brown, LLP and defendant Lefkowitz, Garfinkel, Champi &

DeRienzo, P.C. ("LGC&D"), by their counsel, hereby stipulate and agree that LGC&D shall

have to and including Friday, May 27, 2005 to answer, move, or otherwise respond to the

Complaint filed in the above-captioned action.

BROWN & BROWN, LLP,
By its attorneys,

Patrick J. Bannon, BBO# 635523
Gadsby Hannah LLP
225 Franklin Street
Boston, MA 02110
(617) 345-7000

LEFKOWITZ, GARFINKEL, CHAMPI
& DREIENZO, P.C.,
By its attorneys,

Robert M. Gault, BBO# 187240
Mintz Levin Cohn Ferris Glovsky
& Popeo PC
One Financial Center
Boston, MA 02111
(617) 542-6000

Date: May 12, 2005

So ordered:

_____
Hon. Allan van Gestel

Dated:_____

Date: May 12, 2005

I HEREBY ATTEST AND CERTIFY ON

MAY 19, 2005          , THAT THE

FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____
ASSISTANT CLERK.